UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

CALIX NETWORKS, INC.,                         No. C-09-06038-CRB (DMR)

          Plaintiff,                          **ORDER GRANTING IN PART AND**
**DENYING IN PART PLAINTIFF'S**
**MOTION TO COMPEL**
     v.                                        **JURISDICTIONAL DISCOVERY**

WI-LAN, INC.,

          Defendant.
_____/

     Before this Court is a Motion to Compel Jurisdictional Discovery ("Motion to Compel"),
filed by Plaintiff Calix Networks, Inc. ("Calix"), against Defendant Wi-LAN, Inc. ("Wi-LAN").
*See* Docket No. 43.

     Having considered the parties' briefs and accompanying submissions, as well as the oral
argument of counsel at the September 1, 2010 hearing, the Court hereby GRANTS in part and
DENIES in part Calix's Motion to Compel Jurisdictional Discovery.  This order memorializes
the Court's rulings made at the hearing and supplements the Minute Order issued by this Court
on September 1, 2010.

## I.  FACTUAL & PROCEDURAL BACKGROUND

     Calix produces and sells DSL products and has its principal place of business in
Petaluma, California.  Wi-LAN is a Canadian patent-holding company that has licensed patents
of technological inventions related to high-speed wireless networking.

On December 28, 2009, Calix initiated the instant lawsuit against Wi-LAN, in which Calix sought, *inter alia*, a declaratory judgment that Calix has not infringed two patents-in-suit. On March 22, 2010, Wi-LAN filed a motion to dismiss/transfer, alleging lack of jurisdiction. Subsequently, Calix served Wi-LAN with jurisdictional discovery, to which Wi-LAN agreed not to raise any objections as part of a global agreement to extend deadlines for other non-jurisdictional discovery. *See* Docket No. 44 (Daire Decl. ¶ 4, Exh. C). On May 3 and June 9, 2010, Wi-LAN served responses to Calix's jurisdictional discovery. *See id.* (Daire Decl. ¶¶ 5, 10, Exhs. D, E, I).

On June 30, 2010, Calix filed the instant Motion to Compel. *See* Docket No. 43. Calix's motion centers on one remaining dispute between the parties: Wi-LAN's refusal to produce documents or information relating to its California contacts before January 2008.

## II. DISCUSSION

The sole issue before this Court is the temporal scope of jurisdictional discovery. In response to every request for production and interrogatory at issue, Wi-LAN limited its response to the time period beginning from January 2008 (when the first contact between Wi-LAN and Calix occurred) to December 2009 (when Calix filed the instant suit). *See* Docket No. 55 (Opp'n at 1). Calix asserts that based on either a theory of general or specific jurisdiction, it is entitled to a broader view of Wi-LAN's contacts with California, spanning from 2003 through the present. Calix argues that various facts it has discovered "even without the benefit of Wi-LAN's complete discovery responses" reveal that Wi-LAN had "substantial contacts" with California before January 2008. Wi-LAN counters that Calix has not presented sufficient evidence, under either general or specific jurisdiction, to extend the temporal scope of jurisdictional discovery back to 2003, a time period it claims is irrelevant to the jurisdictional analysis.

For the reasons set forth below, the Court finds a five-year period of jurisdictional discovery (from January 1, 2005 through December 28, 2009) is reasonable in this case. Because Calix has set forth pertinent facts bearing on the question of general jurisdiction that justify the time frame for jurisdictional discovery, the Court focuses on the parties' arguments under general jurisdiction and need not reach Calix's arguments under a theory of specific

1   jurisdiction.

2       The Court first addresses two threshold matters: the requirement of "minimum contacts"

3   under general jurisdiction and the governing law in this case.

4   **A.   <u>Minimum Contacts</u>**

5       "Determining whether personal jurisdiction exists over an out-of-state defendant involves

6   two inquiries: whether a forum state's long-arm statute permits service of process, and whether

7   the assertion of personal jurisdiction would violate due process." *Avocent Huntsville Corp. v.*

8   *Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (citation omitted).  California's long-arm

9   statute permits service of process to the limits of the due process clauses of the federal

10  Constitution.  *See* Cal. Code Civ. Proc. § 410.10; *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*,

11  557 F.2d 1280, 1286 (9th Cir. 1977).  Therefore, the "jurisdictional analysis collapses into a

12  single determination of whether the exercise of personal jurisdiction comports with due process."

13  *Avocent*, 552 F.3d at 1329; *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017

14  (Fed. Cir. 2009).

15      In turn, due process requires that in order to subject a defendant to personal jurisdiction,

16  the defendant must have sufficient "minimum contacts with [the forum state] such that the

17  maintenance of the suit does not offend traditional notions of fair play and substantial justice."

18  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citations

19  omitted).  Indeed, "[i]t is essential in each case that there be some act by which the defendant

20  purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus

21  invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)

22  (citing *Int'l Shoe*, 326 U.S. at 319).  The requirement of "purposeful availment" through

23  minimum contacts ensures that the defendant's conduct and connection with the forum state are

24  such that it should reasonably anticipate being haled into court there.  *See Burger King Corp. v.*

25  *Rudzewicz*, 471 U.S. 462, 474 (1985) (citation omitted).

26      To analyze minimum contacts, courts have distinguished between specific and general

27  jurisdiction.  *See Avocent*, 552 F.3d at 1330.  Specific jurisdiction exists when a plaintiff

28  demonstrates that the defendant has "purposefully directed" its activities at residents of the

3

1   forum and the litigation results from alleged injuries that arise out of or relate to those activities.

2   *Id.* (citations omitted).  General jurisdiction, on the other hand, is based on a defendant's

3   "continuous and systematic general business contacts" with the forum state, which confer

4   jurisdiction "even when the cause of action has no relationship with those contacts." *See*

5   *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Avocent*, 552 F.3d

6   at 1331-32 (citation omitted).

7   **B.   Governing Law**

8   In an action for declaratory judgment of patent non-infringement or invalidity, Federal

9   Circuit law, rather than regional circuit law, governs the determination of personal jurisdiction

10   because the jurisdictional issue is "intimately involved with the substance of the patent laws."

11   *See Avocent*, 552 F.3d at 1328 (citation omitted); *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351,

12   1354 (Fed. Cir. 2002).  While regional circuit law sets the threshold factual showing a plaintiff

13   must make to obtain jurisdictional discovery, an issue which is not unique to patent law, Federal

14   Circuit law controls whether the request for jurisdictional discovery is relevant in assessing

15   minimum contacts.  *See Patent Rights Protection Group, LLC v. Video Gaming Techs., Inc.*, 603

16   F.3d 1364, 1371 (Fed. Cir. 2010) (citing *Autogenomics*, 566 F.3d at 1021-22 (internal citation

17   omitted)); *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d

18   1315, 1323 (Fed. Cir. 2005); *Google, Inc. v. Egger*, No. C-08-03172 RMW, 2009 WL 1228485,

19   at *1 (N.D. Cal. April 30, 2009).

20   1.   Ninth Circuit standard for obtaining jurisdictional discovery.

21   "A district court is vested with broad discretion to permit or deny [jurisdictional]

22   discovery." *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).  Such

23   discovery "should ordinarily be granted where pertinent facts bearing on the question of

24   jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  *Id.*

25   (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986));

26   *see also Am. W. Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) (noting it is

27   not an abuse of discretion to deny jurisdictional discovery "when it is *clear* that further discovery

28   would *not* demonstrate facts sufficient to constitute a basis for jurisdiction") (quoting *Wells*

4

1   *Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 431 n.24 (9th Cir. 1977)) (emphasis

2   added).  A court may grant jurisdictional discovery if the request is based on more than a "hunch

3   that it might yield jurisdictionally relevant facts," *see Boschetto v. Hansing*, 539 F.3d 1011, 1020

4   (9th Cir. 2008), or more than "bare allegations in the face of specific denials."  *See Terracom v.*

5   *Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citation omitted).  In *Laub*, the Ninth

6   Circuit reversed the district court's denial of jurisdictional discovery where the plaintiff's proffer

7   of evidence, without the benefit of such discovery, "may [have been] insufficient" to actually

8   establish jurisdiction.  342 F.3d at 1093.  The Ninth Circuit reasoned that granting the

9   jurisdictional discovery sought by plaintiff– a "detailed accounting of all transactions

10  undertaken" by the defendants – would create a "reasonable probability" that the outcome of the

11  motion to dismiss would be different. *Id.*

12          Indeed, it may be an abuse of discretion for a court to deny jurisdictional discovery where

13  such discovery "*might* well demonstrate" jurisdictionally relevant facts and the plaintiff is denied

14  the opportunity to develop the jurisdictional record.  *See Rutsky & Co. Ins. Servs., Inc. v. Bell &*

15  *Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (emphasis added); *Smugmug, Inc. v. Virtual*

16  *Photo Store, LLC*, No. C 09-2255 CW, 2009 WL 2488003, at *3 (N.D. Cal. Aug. 13, 2009)

17  (granting jurisdictional discovery request "because the existing record is insufficient to support

18  personal jurisdiction and [p]laintiff has demonstrated that it can supplement its jurisdictional

19  allegations through discovery").  *Accord Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*,

20  395 F.3d 1275, 1283 (Fed. Cir. 2005) (holding plaintiff is entitled to jurisdictional discovery

21  where existing record is inadequate to support personal jurisdiction but jurisdictional allegations

22  can be supplemented through discovery); *Cent. States, Se. & Sw. Areas Pension Fund v.*

23  *Phencorp Reinsurance Co.*, 440 F.3d 870, 877-78 (7th Cir. 2006) (finding district court erred by

24  denying jurisdictional discovery relating to general jurisdiction and noting "it is not surprising

25  that [plaintiff] can do little more than suggest" certain minimum contacts given the denial of

26  jurisdictional discovery).

27          Furthermore, courts in this district have held that a plaintiff need not make out a prima

28  facie case of personal jurisdiction before it can obtain jurisdictional discovery.  *See eMag*

1   *Solutions, LLC v. Toda Kogyo Corp.*, No. C 02-1611 PJH, 2006 WL 3783548, at *2 (N.D. Cal.

2   Dec. 21, 2006) (explaining that "[i]t would…be counterintuitive to require a plaintiff, *prior to*

3   conducting discovery, to meet the same burden that would be required to defeat a motion to

4   dismiss") (quoting *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 673 (S.D. Cal.

5   2001)); *Focht v. Sol Melia S.A.*, No C-10-0906 EMC, 2010 WL 3155826, at *2 (N.D. Cal. Aug.

6   9, 2010).  Rather, a plaintiff must present a "colorable basis" for jurisdiction, or "some evidence"

7   constituting a lesser showing than a prima facie case.  *See Google*, 2009 WL 1228485, at *1;

8   *eMag Solutions*, 2006 WL 3783548, at *2; *Focht*, 2010 WL 3155826, at *2.

9            2.       Relevance of jurisdictional discovery request under Federal Circuit law.

10           In turn, to evaluate whether the request for jurisdictional discovery prior to January 2008

11  is based on more than a "hunch" that such discovery might yield facts relevant to general

12  jurisdiction, this Court looks to the Federal Circuit's interpretation of "continuous and

13  systematic" contacts.  *See Commissariat*, 395 F.3d at 1323 (referencing regional circuit law to

14  determine threshold factual showing required for jurisdictional discovery, but applying Federal

15  Circuit law to assess relevance of such discovery to jurisdictional analysis).

16           First, although it has not explicitly ruled upon the appropriate temporal scope for

17  evaluating "continuous and systematic contacts," the Federal Circuit has examined such contacts

18  over a period of years *before* and up to inception of the suit, on a case-by-case basis.  *See, e.g.*,

19  *Autogenomics*, 566 F.3d at 1015-16, 1018 (five-year period prior to lawsuit); *Synthes v. G.M.*

20  *Dos Reis*, 563 F.3d 1285, 1288, 1290, 1297 (Fed. Cir. 2009) (four-year period prior to lawsuit);

21  *Campbell Pet Co. v. Miale*, 542 F.3d 879, 881-84 (Fed. Cir. 2008) (eight-year period prior to

22  lawsuit).  *See also Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir.

23  1996) (finding minimum contacts in general jurisdiction cases are "commonly assessed over a

24  period of [three to seven] years prior to the plaintiff's filing of the complaint" and concluding

25  that "the phrase 'continuous and systematic' necessarily requires that courts evaluate the

26

27

28

1    defendant's contact with the forum state *over time*") (emphasis added).[1]

2        Second, the Federal Circuit has not "outlined a specific test to follow" when analyzing

3    whether a defendant's forum contacts are "continuous and systematic." *LSI Indus., Inc. v.*

4    *Hubbell Lighting, Inc.,* 232 F.3d 1369, 1375 (Fed. Cir. 2000).  Instead, "a court must look at the

5    facts of each case to make such a determination." *Id.*  However, in a declaratory judgment action

6    seeking patent non-infringement or invalidity, forum-directed activities beyond those relating to

7    enforcement or defense of the patents-in-suit "may in the aggregate justify the exercise of

8    *general* jurisdiction…."  *See Avocent*, 552 F.3d at 1336 (emphasis in original).  Thus, the

9    defendant patentee's general commercialization efforts directed at the forum, including activities

10    not involving the patents-in-suit, may be relevant to the analysis of general jurisdiction.  *See id.*

11    at 1336 & n.5.

12    **C.**    <u>**Jurisdictional Discovery**</u>

13        With the foregoing governing principles in mind, the Court has considered the allegations

14    and evidence set forth by Calix as its basis for obtaining jurisdictional discovery from Wi-LAN

15    before January 2008.  The Court finds that jurisdictional discovery prior to the date of Wi-LAN's

16    first contact with Calix is appropriate.  Calix has presented a colorable basis for personal

17    jurisdiction by setting forth pertinent facts, largely uncontroverted by Wi-LAN, bearing on the

18    question of general jurisdiction.  Furthermore, to the extent the record may be inadequate, Calix

19    has demonstrated that it can supplement its jurisdictional allegations through discovery.

20        First, Calix argues that Wi-LAN has already acknowledged numerous contacts with

21    California during the time period from January 2008 to the present.  In its complaint, Calix

22    contends that "Wi-LAN has targeted and met with companies located in the Northern District of

---

24        [1] Wi-LAN relies on two Eighth Circuit cases, *Johnson v. Woodcock*, 444 F.3d 953, 955-

25    56 (2006), and *Pecoraro v. Sky Ranch For Boys, Inc.*, 340 F.3d 558, 562 (2003), for the

26    proposition that minimum contacts must exist "either at the time the cause of action arose, the
time the suit was filed, or within a reasonable period of time immediately prior to the filing of

27    the lawsuit."  These cases do not address the proper temporal scope of jurisdictional discovery
and may be read in harmony with the Second Circuit's observation that minimum contacts

28    should be examined "over a period that is reasonable under the circumstances - up to and
including the date the suit was filed...."  *See Metropolitan Life*, 84 F.3d at 569.

California." *See* Docket No. 1 (Complaint ¶ 7).  In support of this allegation, Calix states that Wi-LAN has produced evidence of "commercial" contacts with "approximately 174 California-based entities between January 22, 2008 and the present," *see* Docket No. 43 (Mot. at 6), and attaches Wi-LAN's supplemental response to Interrogatory No. 16 listing over 170 companies with which Wi-LAN acknowledges "it has had contact of some generally commercial nature, some of which activities may have been in California...." *See* Docket Nos. 44, 44-9 (Daire Decl. ¶ 10, Exh. I).  Furthermore, Calix contends that Wi-LAN has entered into licenses of the patents-in-suit with "at least 35...California-based licensees." *See* Docket No. 66 (Reply at 1, 6).  As evidence, Calix includes a copy of one such licensing agreement with California-based Digital Spectrum Solutions, Inc., in which Wi-LAN agreed to the "non-exclusive jurisdiction" of California federal courts.  *See* Docket No. 67 (Daire Decl. ¶ 2, Exh. C, filed under seal).

At oral argument, Wi-LAN did not dispute Calix's characterization of Wi-LAN's California contacts during the period from January 2008 through 2009.  Wi-LAN only contends that the 174 commercial contacts included "cease and desist letters" that provided notice to companies of potential patent infringement and that are not properly considered as a basis for jurisdiction.  In so arguing, Wi-LAN relies on *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998).  However, the Federal Circuit in *Red Wing Shoe* held that cease and desist letters "alone do not suffice" to establish personal jurisdiction, and did not hold that such letters are irrelevant to a *general* jurisdiction analysis.  *Red Wing Shoe*, 148 F.3d at 1361; *see also Avocent*, 552 F.3d at 1333, 1336 & n.5 (discussing *Red Wing Shoe* in the context of specific jurisdiction and distinguishing factors that may be considered under general jurisdiction).  Here, Calix does not allege that Wi-LAN's forum-directed activity consisted *solely* of cease and desist letters but presents evidence of other forum activity, including licensing by Wi-LAN of the patents-in-suit to "at least 35 California-based licensees," which Wi-LAN does not dispute.[2]

---

[2] Wi-LAN only argues such licensing activity plays no role in the jurisdictional analysis. While non-exclusive licensing activity unrelated to enforcement or defense of the patents-in-suit does not create a basis for *specific* jurisdiction in a declaratory judgment action for patent non-

Particularly given the extent of Wi-LAN's California contacts from January 2008 through 2009, Calix should be allowed to develop the jurisdictional record regarding whether any such contacts actually *pre-date* that period.  *See Rutsky*, 328 F.3d at 1135 (abuse of discretion for a court to deny jurisdictional discovery where such discovery "*might* well demonstrate" jurisdictionally relevant facts and plaintiff is denied the opportunity to develop record) (emphasis added); *Smugmug*, 2009 WL 2488003, at *3 (jurisdictional discovery appropriate where plaintiff demonstrated it can supplement jurisdictional allegations through discovery).

Next, Calix sets forth evidence of Wi-LAN's contacts in California *prior to 2008*: a history of retention of California-based patent attorneys to maintain and enforce the patents-in-suit, since 2007; and enforcement activity against a California-based company involving one of the patents-in-suit in 2006.

It is uncontroverted that Wi-LAN has engaged the services of California-based patent attorneys since 2007.  In March 2007, Wi-LAN hired a California patent attorney for purposes of maintaining one of the patents-in-suit.  Wi-LAN only argues that its retention of the California patent attorney (from 2007 to November 2008) was "brief and limited in nature," and that a distinction should be drawn between "maintenance" of the patent and its "enforcement." According to Wi-LAN, the California patent attorney was not hired to do the latter.[3]  *See* Docket No. 55 (Opp'n at 7-8).  In so asserting, Wi-LAN misconstrues Calix's argument[4] and cites to *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003), for the proposition that

---

infringement, these activities may nonetheless "in the aggregate justify the exercise of *general* jurisdiction." *See Avocent*, 552 F.3d at 1335-36 & n.5; *see also Smugmug*, 2009 WL 2488003, at *3-4 (granting jurisdictional discovery where plaintiff sought to supplement its general jurisdiction allegations concerning defendant's licenses of patents-in-suit with California companies because pertinent facts were controverted and it was "not clear" how many licenses defendant had in fact granted to California companies).

[3]  The Court notes that Wi-LAN claims in its brief that the patent attorney "did not engage in any enforcement activity" without any accompanying declaration to that effect.  As such, it is nothing more than a bare assertion with no evidentiary value.

[4]  Calix raises Wi-LAN's retention of the California patent attorney in relation to its argument under general, not specific, jurisdiction.  *See* Docket No. 43 (Mot. at 9-10).

retention of a patent attorney is only relevant to the jurisdictional analysis where the patent attorney engages in enforcement activities. *See* Docket No. 55 (Opp'n at 7-8). However, this distinction for present purposes is a red herring. *Electronics for Imaging* is inapposite; the Federal Circuit limited its holding, including its discussion of the patent attorney's role, to the issue of *specific* jurisdiction because general jurisdiction was not asserted by the defendant in that case. 340 F.3d at 1349-51. Furthermore, Wi-LAN does not dispute that it engaged the firm of Townsend & Townsend & Crew of Palo Alto as litigation counsel to enforce the patents-in-suit; at oral argument, counsel for Wi-LAN merely asserted that the firm was retained in "late 2008."

Additionally, Calix provides some evidence, although scant, that Wi-LAN engaged in "enforcement" activity relating to the patents-in-suit in December 2006 against a California third party chipset supplier of "the very Calix products that Wi-LAN accuses of infringement in this case." *See* Docket No. 66 (Reply at 8-9); Docket No. 67 (Daire Decl. ¶ 2, Exh. B at 4, filed under seal). At oral argument, counsel for Calix attested that the third party supplier is based in California; Wi-LAN did not contend otherwise but only claimed that it sent a cease and desist letter and that "licensing activity" is irrelevant. As noted above, Wi-LAN erroneously relies in part on an analysis of specific jurisdiction. Moreover, the parties dispute the nature of the activity engaged in by Wi-LAN against the third-party supplier, and the record remains unclear as to the extent of such activity. Here, the Court underscores that where pertinent jurisdictional facts are controverted or a more satisfactory showing of the facts is necessary, jurisdictional discovery should ordinarily be granted. *See Laub*, 342 F.3d at 1093. Enforcement activity against third parties involving the patents-in-suit is a relevant fact that may hold legal significance in the ultimate jurisdictional analysis. In *Viam Corp. v. Iowa Export-Import Trading Co.*, the Federal Circuit found that the patentee's relevant jurisdictional activity included separate enforcement proceedings involving the patent-in-suit brought in the same court, even though the proceedings were initiated against *other alleged infringers unrelated to the action at bar*. 84 F.3d 424, 430 (Fed. Cir. 1996). In interpreting *Viam*, the Federal Circuit has reasoned that such enforcement activity constitutes "significant contact with the forum

1    materially related to the enforcement of the relevant patent." *Avocent*, 552 F.3d at 1338-39.

2        Thus, having considered the *aggregate* picture of Wi-LAN's California contacts, the

3    Court concludes that Calix has set forth a colorable basis to obtain jurisdictional discovery and

4    demonstrated that such discovery prior to January 2008 may yield additional facts relevant to the

5    question of personal jurisdiction. *See Laub*, 342 F.3d at 1093; *Rutsky*, 328 F.3d at 1135; *Google*,

6    2009 WL 1228485, at *1; *Smugmug*, 2009 WL 2488003, at *3. Given the allegations and

7    evidence presented by Calix, Wi-LAN may not properly limit the jurisdictional inquiry to the

8    time period post-dating Wi-LAN's first contact with Calix. It falls within this Court's discretion

9    to determine a reasonable temporal scope for jurisdictional discovery, *see Metropolitan Life*, 84

10   F.3d at 569-70, while keeping in mind that the Federal Circuit has examined "continuous and

11   systematic" contacts over a period of several years prior to commencement of the lawsuit at

12   issue. *See, e.g.*, *Autogenomics*, 566 F.3d at 1015-16, 1018; *Synthes*, 563 F.3d at 1288, 1290,

13   1297; *Campbell Pet*, 542 F.3d at 881-84.[5]

14       Accordingly, the Court finds that a reasonable time frame for jurisdictional discovery in

15   this case is January 1, 2005 through December 28, 2009 – approximately a five-year period.[6]

16   *See Metropolitan Life*, 84 F.3d at 569 (holding that district court "reasonably provided for

17   [jurisdictional] discovery for a six-year period" prior to filing of the lawsuit up to and including

18

19   _____

20       [5] Moreover, the only question before this Court is the appropriate time period of
     jurisdictional discovery, and not the question of whether Calix is ultimately able to establish
21   personal jurisdiction in this case. Indeed, the fact that Wi-LAN agreed to provide responses to
     Calix's jurisdictional discovery requests – albeit limited in temporal scope – indicates that Wi-
22   LAN does not contest that some degree of jurisdictional inquiry is appropriate here.

23
         [6] The Court notes it is undisputed that in April 2004, Wi-LAN previously invoked
24   the benefits and protections of this forum by initiating an action in California state court that
     alleged various state law claims against another company. In that case, Wi-LAN asserted that
25   the "agreement(s), alleged agreement(s), and obligations that are the subject of [the] action were
     entered into, created, and/or breached in [San Diego] County, and are governed by the laws of
26   the State of California." *See* Docket No. 44 (Daire Decl. ¶ 13, Exhibit K, Wi-LAN complaint ¶
     5). Thus, Calix has presented evidence of Wi-LAN's activity in California reaching back to
27   early 2004. In light of the extent of Wi-LAN's potential contacts with California, a five-year
     period of jurisdictional discovery is reasonable.
28

1    the date the suit was filed); *In re Terrorist Attacks*, 440 F. Supp. 2d 281, 285 (S.D. N.Y. 2006)

2    (allowing jurisdictional discovery for a period of six years prior to commencement of suits);

3    *Birnberg v. Milk Street Residential Assocs., LLP*, No. 02 C 978, 2002 WL 1162848, at *4 (N.D.

4    Ill. May 24, 2002) (holding that five-year period of jurisdictional discovery was a sufficient

5    period of time for plaintiffs to discover "continuous and systematic" business contacts).

### III. CONCLUSION

7         Calix's Motion to Compel is GRANTED in part and DENIED in part.  By no later than

8    **September 15, 2010**, Wi-LAN shall produce all responsive documents and supplement all

9    interrogatory responses to the jurisdictional discovery requests at issue regarding Wi-LAN's

10   contacts with California for the time period beginning from **January 1, 2005 up to and**

11   **including December 28, 2009**.[7]  Wi-LAN shall bear the costs of reviewing and gathering the

12   responsive documents.  Calix shall bear the costs of reproduction, unless the parties agree

13   otherwise.

15         IT IS SO ORDERED.

17   DATED: September 8, 2010

     _____
     DONNA M. RYU
     United States Magistrate Judge

---

26        [7] This Court's ruling is limited to the appropriate temporal scope of jurisdictional
27   discovery in this case and as such, should not be construed as indicating whether this entire time
     period should be considered in determining the existence of personal jurisdiction.  The latter
28   question remains within the sound discretion of the District Court.